UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

                                         CASE NO. 21:60273-CR-Williams-Valle

-vs-

PETER ROUSSONICOLOS,

    Defendant.

_____/

## APPEAL FROM MAGISTRATE'S ORDER OF PRETRIAL DETENTION

COMES NOW, PETER ROUSSONICOLOS, by and through his undersigned attorney and hereby files this his Appeal for Magistrate's Order of Pretrial Detention.

On September 29, 2021 a Pretrial Detention Hearing was held via Zoom before United States Magistrate Judge Laura Snow. Present for that hearing via Zoom were the Defendant, Peter Roussonicolos, the United States represented by Jaime de Boer, Esquire and Frank A. Rubino, Esquire representing the Defendant, Peter Roussonicolos. The hearing was called at 1:57 p.m. The United States Government through Assistant United States Attorney Jaime de Boer proceeded by Proffer.

The Proffer claimed that the defendant recruited straw owners to put their names on paperwork for multiple DME's although no proof of this was ever offered. The government further claimed that as part of this scheme the defendant negotiated kick back agreements for various patient brokers. These kick back agreements were concealed through sham contracts that falsely stated that the payments were flat rates for legitimate marketing services. In reality the payments were on a per patient basis and there was an understanding that the patients would receive an average of 2.5 prescriptions for braces. Again no proof offered. The government further stated that in order to get these prescriptions the patients were sent to telemedicine companies where they often were never seen by a doctor before prescriptions were signed for the DME. Again no proof offered.

After making these bold accusation the government offered no proof whatsoever of their correctness or accuracy merely stating this is what the defendant did without an back up or corroboration. The government did admit that multiple cooperating witnesses have provided information to the government in exchange for sentence reductions that they would hope to eventually receive. Not the most credible type of witness the government could offer, but the only ones they had.

The government then went on to claim that the defendant had actually threatened 7 witnesses. The government claimed that Witness No. 1 told the government that the defendant was going to send people to kill him. No reason given for the threat that allegedly occurred in 2020 before the defendant

Peter Roussonicolos was indicted. The government could not state what Peter Roussonicolos wanted the witness to do or refrain from doing or even why the alleged threat was made, if it all.

Witness No. 2 allegedly told the government that Mr. Russounicolos wanted to stab two of his former business partners in the throat, but had never threatened Witness No. 2 with any harm whatsoever obviously not a threat against Witness No. 2.

The government claimed that Witness No. 3 stated that Roussonicolos claimed that he used to rob drug dealers at gunpoint, not that he was threatened in any way, shape or form. Again, not a threat, and totally unsubstantiated.

The government claims that Witness No. 4 stated that Mr. Roussonicolos yelled and cursed at him/her in a way that made him/her feel threatened. Yelling and cursing is a long way from a physical threat. Again, no threat Peter Roussonicolos may have had a short temper, a loud mouth but that does not equal threats.

Witness No. 5 told the government that they received a call from someone stating that they owed Roussonicolos $25,000.00. Not a threat. No record of this call.

The government claimed that Witness No. 6 corroborated this information though they never received any actual threats themselves. Again, no threats made by the defendant.

The government then stated that with Witness No. 7 and attorney felt in danger. No claim was ever made that defendant Peter Roussonicolos in any way, shape or form threatened this person. Not one of the 7 were actually threatned.

The government then moved from these alleged threats to the financial aspect of the case. The government claims that Twenty Two Million Dollars flowed from Medicare to five DME companies. Of the Twenty Two Million Dollars to the five DME companies the government claimed that less than Three Million Dollars went to the DME company owned and controlled by the defendant Peter Roussonicolos. Where did the remaining 19 million go?

The government then proffered that Mr. Roussonicolos had approximately $150,000.00 that he has access to in the United States which came from the sale of one of his properties this past July. The government's theory must be that only indigent people should be released on bond.

They further proffered how the defendant had sent money out of the country to his wife's family members, and over $400,000.00 to a lawyer in Greece for the purchase and decoration of a vacation home for the defendant and his wife.

The government then proffers that the defendant and his wife returned to the United States from Greece without any luggage. The fact that they left clothing at their vacation home so they would not have to bring clothes back and forth does not mean they were going to move there. The more important fact is that the defendant was coming back to the United States. The defendant had made four trips to Greece and always returned to the United States.

The government claims that the Greek authorities told them that Defendant Peter Roussonicolos holds dual citizenship. This is totally false. Peter Roussonicolos is a United States Citizen only. He only has a U.S. Passport. He does not have a Greek Passport.

The government argues that the defendant's lengthy criminal history confirms that he is capable of carrying out the threats that he has made. Agent Tally testified that the defendant was not aware of the investigation until he was indicted and arrested at the airport. Therefore, it makes no sense that he would be making threats to people when he was not indicted or knew he was under investigation. The government does concede that defendant Peter Roussonicolos has not been charged with many crimes since 2011 over 10 years ago. The defendant's last serious contact with the law enforcement was at age 38. The defendant is now 60 years old. He did have a charge of driving without a license at age 54 and at age 56 he was charged with parking a commercial vehicle in a residential neighborhood. In fact, he has been charged three times with parking a commercial vehicle in a residential neighborhood at age 56 and twice at age 57. Further at age 57 he was arrested on a charge of a storm shutter regulation, in other words, his hurricane shutters weren't correct.

The court was presented with numerous facts to show that the defendant is not a danger to the community or a risk of flight. It was further proffered to the court that the defendant owns his own home in Port St. Lucie which has a little over $300,000.00 in equity. He has been married three years to his wife who is a Ukrain citizen and now for the past 11 years she has been a United States Citizen. The fact that the defendant owns a small vacation home in Greece should not be an impediment to his being released on bond since he has no relatives in Greece, no family members, no one there whatsoever. All of his family members his mother, his brother, his nephew, his father, his sister, his daughter all live in the United States. All of his ties are here the United States he has no family ties in the world other than here in the United States.

The defendant owns three cars, he has a bank accounts, he has credit cards, everything he has is here in the United States. The defendant has known about this investigation for well over six-eight months he has been aware of it and in spite of that he has still returned to the United States after vacationing in Greece.

To show the defendant's strong ties to the community the following bond offer was made to the court that the defendant and his wife would sign a $300,000.00 personal surety bond secured by their home. Also, the defendant's mother owns a home in Deerfield Beach, Florida which has approximately four hundred to five hundred thousand dollars in equity. The defendant's mother would sign a bond for Five Hundred Thousand Dollars secured by the equity in her home. The defendant's nephew, Christos, lives in

Port St. Lucie and he owns a residential lot which is worth over $100,000.00 and has no mortgage, he also would post that property to secure a bond for the defendant.

Interestingly enough the co-defendant in this case has been released on a personal surety bond while this defendant offers the court one million dollars of collateral to back his bond.

The defendant would never flee the country causing his wife, his mother, and his nephew to all lose their property here in the United States.

The Federal Bail Reform Act, provides in mandatory terms, the factors courts are to consider in making determination as to bail:

1. Nature and circumstances of the offense charged.
   **Medicare Fraud white collar crime**
2. Weight of evidence against the accused.
   **Convicted criminals looking for sentence reduction**
3. Accused's family ties.
   **Mother, father, wife, nephew, brother, sister and daughter**
4. Employment.
   **Always employed**
5. Financial resources.
   **Excellent**
6. Character and mental condition.
   **Excellent**

7. Length of his residency in the community.
**40 years**

8. Record of convictions.
**Not serious last 15 years**

9. Record of appearance at Court proceedings or flight to avoid prosecution.
**Excellent**

Under these circumstances there clearly is a condition or a combination of conditions that can assure the court of the defendant's presence at trial or other hearings.

The defendant suffers from severe kidney stones. While the defendant was in Greece he had a kidney stone attack and the doctors there recommended that immediately upon his return to the United States he see his doctor because these kidney stones may require surgery. Upon arriving in the United States the defendant was immediately arrested and obviously was unable to seek his own physician. During the last two weeks the defendant has been incarcerated at the Federal Detention Center he has requested every single day to see a doctor because he is in grave pain from the kidney stones. After almost two full weeks the defendant has yet to see any medical person from the Federal Detention Center and still continues to suffer.

WHEREFORE it is most respectfully requested that this Honorable Court to set aside the Order of Detention in this case and set a fair and reasonable bond for the defendant.

## MEMORANDUM OF LAW

The Bail Reform Act of 1984 completely revises pretrial and post-trial detention. A person charged with an offense will be (1) released on his personal recognizance or unsecured appearance bond; (2) released on conditions; (3) temporarily detained; or (4) detained after a hearing. Personal recognizance or unsecured appearance bond is appropriate unless the judge determines "such release will not reasonably assure appearance of the person as required or will endanger the safety of any other person or the community." **Section 3142(b)**.

If personal recognizance or the appearance bond is not sufficient, the magistrate will resort to conditions of **Section 3142(c)**, mindful the pretrial relief should not impose a financial condition that results in pretrial detention, **Section 3142(c)(2)**. A mandatory condition is not to commit a federal, state, or local crime during the period of release, **Section 3142(c)(1)**. Other conditions of a **Section 3142(c)** release may require the person to remain in the custody of a designated person, maintain employment or education, limit travel, avoid contact with an alleged victim, report on a regular basis to a designated law enforcement agency or pretrial services agency, comply with a curfew restriction, refrain from possessing a firearm or the excessive use of alcohol or narcotics, undergo medical or psychiatric treatment, return to

custody for specific hours, or any other necessary condition. The conditions may include an agreement to forfeiture of property or money and the posting of the indicia of property or a percentage of the money required. The defendant may also be required to execute a bail bond with solvent sureties. The legislative history indicates that pretrial release should not be dependent upon the wealth of the defendant. This provision is the most salutary feature, and courts are encouraged to make creative use of the conditions rather than setting unattainable bonds.

The purpose of bail is to reasonably secure the defendants' presence at trial and that he will submit to the judgment of the Court, if convicted. ***Ex parte Miburn***, 34 U.S. (9 Pet.) 704 (1835).

> The Court in ***Miburn*** said:
>
> "A recognizance of bail in a criminal case, is taken to secure the due attendance of the party accused, to answer the indictment and to submit to a trial, and the judgment of the court thereon. It is not designed as a satisfaction for the offense, when it is forfeited and paid; but as a means of compelling the party to submit to the trial and punishment which the law ordains for the offense."

This rationale has been frequently reiterated in the following cases: ***Cohen v. United States***, 82 S.Ct. 526, 7 L.Ed.2d 13 (1961); ***Bandy v. United States***, 82 S.Ct. 11, 7 L.Ed.2d 9 (1961); ***Reynolds v. United States***, 80 S.Ct. 30, 4 L.Ed.2d 46 (1959); ***Stack v. Boyle***, 342 U.S. 1 (1951).

Law Firm of Frank A. Rubino, Esq., P.A.

550 Biltmore Way, Suite 780, Coral Gables, Florida 33134, Tel: (305) 858-5300, Fax: (305) 350-2001

The Eighth Amendment, while not providing an absolute right to bail, does require that bail not be excessive. **_Stack v. Boyle_**, 342 U.S. 1 (1951).

In **_United States v. Salerno_**, 107 S.Ct. 2095 (1987), the Court advises that the government's proposed conditions of release or detention must not be "excessive" in light of the perceived evil. The government's interest must be compared against the response of the Defendant and bail set to ensure that interest of government is met.

A number of empirical studies suggest that the seriousness of the crime and the Defendant's prior criminal record are determinative factors in the majority of cases. _See_, **Schlesinger Bail Reform: Protecting the Community and the Accused**, 9 HarvJL & PubPolicy 173 (1986).

The nature of the crime, although serious, combined with other factors in the Defendant's favor can overcome the presumption and entitle the Defendant to pretrial release. **_United States v. Hawkins_**, 636 F.Supp. 1462 (SDFL 1986); **_United States v. Leon_**, 766 F.2d 77, (2d Cir. 1985) and **_United States v. Miller_**, 625 F.Supp. 513 (DKAN 1985).

The many factors of the Bail Reform Act of 1984 must be considered and the "totality of the circumstances" surrounding the Defendant's charged crime be considered before pretrial detention is ordered; (such as: the weight of the evidence, **_United States v. Cardenas_**, 784 F.2d 937 (9 Cir. 1986); a good track record while on bail in the past, **_United States v. Freitas_**, 602 F.Supp. 1283 (NDCAL 1985); dangerousness to community, **_United States v. Jones_**, 614

F.Supp. 96 (EDPA 1985); ties to the community, **_United States v. Knight_**, 636 F.Supp. 1462 (SDFL 1986). These cases discuss the aforementioned factor and how the courts looked at them in deciding upon bail.

In the case at bar, the Defendant has fulfilled all of the qualifications for release as required by the Bail Reform Act of 1984.

                                                            Respectfully submitted,

| FRANK A. RUBINO, ESQ. | J.DAVID BOGENSCHUTZ, ESQ. |
|---|---|
| Attorney for Peter Roussonicolos<br>550 Biltmore Way<br>Suite 780<br>Coral Gables, FL  33134<br>(305) 858-5300<br>Fla. Bar No: 209171<br>frank@frankrubino.com | Attorney for Peter Roussonicolos<br>633 S.E. 3rd Avenue, Ste 202<br>Ft. Lauderdale, Florida  33301<br>(954)764-2500<br><br>Fla. Bar No: 131174<br>david@bogenschutzpa.com |
|  (s)  Frank A. Rubino | (s) David Bogenschutz |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case this 25th day of October 2021.

<u>(s) Frank A. Rubino, Esquire</u>